# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARTHUR TZIRIDES, | ) |
| Petitioner, | ) No. 11 C 6572 |
| v. | ) |
| U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, DISTRICT DIRECTOR | ) Judge Rebecca R. Pallmeyer |
| Respondents. | ) |

## MEMORANDUM OPINION AND ORDER

Petitioner, Arthur Tzirides, a naturalized citizen, claims that the birth date on his United States immigration records is incorrect because of a decades-old clerical error in Greece, where he was born. He filed a petition to amend his Certificate of Naturalization to correct the error. Respondents, the United States Department of Homeland Security ("DHS") and the District Director for the United States Citizenship and Immigration Services ("USCIS"), moved to dismiss the petition for lack of jurisdiction. For the reasons explained here, Respondents' motion [10] is denied.

## FACTS AND PROCEDURAL BACKGROUND

Arthur Tzirides was born in Kilkis, Greece. According to his birth certificate, from the records department of Kilkis, Mr. Tzirides was born on November 18, 1946. (Kilkis Birth Certificate, Ex. 3 to Pet. to Amend Certificate of Naturalization [1], hereinafter "Pet.") Tzirides's original birth certificate, which was translated into English in 2009, also records that Tzirides was baptized on March 9, 1947, and that his mother worked as a housewife while his father worked as a designer of horse-drawn carriages. (*Id.*) In support of his Petition to this court, Tzirides has submitted an affidavit in which he recalls his mother's account of the family's migration within Greece and ultimate immigration to the United States. The affidavit presents Tzirides's understanding that political turmoil in Greece caused his Petitioner's family to move from Kilkis to Thessaloniki, and

that they settled in the Municipality of Ambelokipi when he was ten years old. (Pet.'s Aff., Ex. 6 to Pet.)

Petitioner believes that during the move to Ambelokipi, "a civil re-registration process may have occurred when [his] day of birth had been inaccurately translated." (*Id.*) Petitioner's certificate of registration as a citizen of Ambelokipi on October 30, 1957 reflects a different birth date for Petitioner than his original birth certificate from Kilkis. The Ambelokipi certificate states that Petitioner's birth date is November 27, 1946—nine days later than the date on his Kilkis birth certificate. (Certificate from the Mayor of the Municipality of Ambelokipi, Ex. 1 to Pet.) Petitioner asserts that he had no role in making the error that led to his birth date being inaccurately recorded. (Pet. at 3.) According to Petitioner's affidavit, his mother told him that the mistake went undetected because of tumultuous conditions in Greece at that time. (Pet.'s Aff.)

Five years after issuance of the Ambelokipi certificate, Petitioner's family lawfully entered the United States through New York City in April 1962. (Pet. at 2.) The family used the Ambelokipi certificate in Petitioner's naturalization paperwork when it applied for his naturalization in 1963 because, according to Petitioner, his original birth certificate from Kilkis was not "readily available" during the immigration. (Pet.'s Aff.; 2/4/11[1] Letter from Pet.'s Att'y to USCIS, Ex. 4 to Pet., at 1.) Petitioner's affidavit does not explain why his birth certificate was not available at that time, but does point out that "[a]ll of [his] civic/citizenship/immigration affairs were handled by [his] parents as [Petitioner] was a fifteen year old boy at the time." (Pet.'s Aff.) As a result of the error in the Ambelokipi certificate provided to United States immigration services, Petitioner's birth date was recorded wrongly by USCIS as November 27, 1946. (Pet. at 2.)

Until September 2004, Petitioner incorrectly believed he was born on November 27, 1946,

---

[1] Though the letter is dated February 4, 2010 rather than 2011, the court concludes, based on the fact that it was submitted with the February 11, 2011 Form N-565, that the 2010 date is a clerical error.

2

the date recorded in his Ambelokipi certificate. (2/11/11 N-565 Form, Ex. 4 to Pet., at pt. 5.) The inaccurate birth date on the Ambelokipi certificate followed Petitioner as he built a life in the United States. His school records and driver's license included it. (Pet.'s Resp. to USCIS' Mot. to Dismiss [27], hereinafter "Pet.'s Resp.", at 1.) When Petitioner eventually applied for citizenship, he also used the erroneous November 27, 1946 birth date in his Petition for a Certificate of Naturalization. The information Petitioner provided to the naturalization authorities was made part of his immigration file when he became a permanent resident on June 13, 1967. Petitioner's Certificate of Naturalization therefore inaccurately states that his birth date was November 27, 1946. (Certificate of Naturalization, Ex. 2 to Pet.; Pet.'s Resp. at 1.)

In September 2004, Petitioner obtained a certified copy of his handwritten birth certificate from Kilkis, which was created on November 21, 1946. The Certificate states that Petitioner's actual birth date was November 18, 1946. At some point after September 2004, according to Petitioner, he updated the Social Security Administration on his birth date error, and the Social Security Administration changed his birth date in their records to November 18, 1945, consistent with the date in his Kilkis birth certificate. (Pet.'s Resp. at 2.) Petitioner alleges that when he later sought to renew his expiring driver's license at the Illinois Department of Motor Vehicles ("DMV"), the DMV refused to issue a new driver's license because the birth date on his Social Security records does not match the birth date that appeared on his existing license.[2] (Pet.'s Resp. at 2.) Petitioner also asserts that he presented the DMV with affidavits from two elderly women of Kilkis who confirmed Petitioner's birth on November 18, 1946, but the DMV still refused to renew his license. (*Id.* at 2.)

---

[2] The date when Petitioner updated the Social Security Administration about his correct birth date and the date when he was refused a renewed driver's license are not in the record. Petitioner has referred to exhibits that presumably would include those dates, but the exhibits are not in the record.

Petitioner filed Form N-565, a request for a replacement Certificate of Naturalization, with USCIS on October 14, 2009. (10/14/09 N-565 Form, Ex. A to Resp'ts' Reply in Supp. of Their Mot. to Dismiss [32], hereinafter "Resp'ts' Reply", at 2-3.) On December 15, 2009, he received a new certificate with the same incorrect birth date. Director F. Gerard Heinauer of the USCIS Nebraska Service Center stated in a letter that correcting Petitioner's birth date was not justified because he swore under oath when he was naturalized that his birth date was November 27, 1946. (12/15/09 USCIS letter, Ex. A to Resp'ts' Reply at 4; Pet.'s Resp. at 2.) USCIS did not inform Petitioner in that letter that only a federal court has jurisdiction to amend naturalization certificates.

On February 11, 2011, Petitioner filed a second Form N-656, explaining that he did not discover his true birth date until he secured a certified copy of his original birth certificate in September 2004. (2/11/11 N-565 Form at p. 5.) On March 23, 2011, Nebraska Service Center Director Marilyn Wiles again refused Petitioner's request to change the birth date that appears on his Certificate of Naturalization. Her denial letter states that only a federal court, not the District Director of USCIS, has jurisdiction to amend the birth date on his certificate. (USCIS Decision, Ex. 5 to Pet.) Petitioner then filed his Petition to Amend Certificate of Naturalization with this court on September 20, 2011.

In their motion to dismiss, Respondents argue that Petitioner's case is barred from review because it is outside the six-year statute of limitations in 28 U.S.C. § 2401(a), and therefore this court lacks jurisdiction to hear the case. (Resp'ts' Mem. in Supp. of Mot. to Dismiss [12], hereinafter "Resp'ts' Mem.", at 7.) Respondents concede that, were Petitioner's claim not time-barred, this court would have authority to grant the amendment under § 338.5, which authorizes federal courts to amend Certificates of Naturalization. (Resp'ts' Mem. at 6.)

## **DISCUSSION**

It is axiomatic that federal courts are courts of limited jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). A party may therefore

seek dismissal of a complaint for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). The burden of proving that a cause of action is within the court's subject matter jurisdiction rests on the party asserting jurisdiction. *Kokkonen*, 511 U.S. at 377. A court is free to weigh the evidence to determine whether jurisdiction has been established. *Id.* at 946 (citation omitted). In reviewing a motion to dismiss, the court accepts as true all facts alleged in the complaint and draws all reasonable inferences in favor of the Petitioner. *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 539 (7th Cir. 2012).

### I.     Applicability of § 2401(a)

The general statute of limitations for civil actions against the United States bars any "civil action commenced against the United States . . . unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). The six-year filing deadline applies to all civil actions, "whether legal, equitable or mixed." *Macklin v. United States*, 300 F.3d 814, 821 (7th Cir. 2002) (citation omitted). When filing within a limitations period is a condition of the government's waiver of sovereign immunity, it must be narrowly construed. *Diliberti v. United States*, 817 F.2d 1259, 1261 (7th Cir. 1987). The Supreme Court has cautioned, however, that a limitations provision should not be characterized as "jurisdictional" unless Congress has clearly directed that interpretation. *Sebelius v. Auburn Regional Medical Center*, 133 S.Ct. 817, 824 (2013), citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

Respondents nevertheless urge that § 2401(a) bars this court from exercising jurisdiction over Tzirides's petition to amend his Certificate of Naturalization. (Resp'ts' Mem. at 5.) Respondents argue that a "civil action" under the statute is defined as any civil action filed in a court of competent jurisdiction, and Petitioner's suit is a civil action because it is against an agency of the United States and an official acting on behalf of that agency. (Resp'ts' Mem. at 4.) Because Tzirides did not file his petition within six years of his discovery of the mistake in his records, Respondents contend, it must be dismissed as beyond the jurisdiction of the court pursuant to

5

§ 2401(a).

Petitioner argues that § 2401(a) does not apply because there are separate statutes of limitations within immigration law. (Pet.'s Resp. at 4.) But, though he cites various statutory time limits from the Immigration and Nationality Act, Petitioner does not identify what statute should apply here, nor does he make specific reference to any statute longer than six years. (Pet.'s Resp. at 4-5.) Petitioner points out that the Supreme Court held in *Schneiderman v. United States* that a denaturalization suit "is [not] an ordinary civil action since it involves an important adjudication of status." 320 U.S. 118, 160 (1943). That holding related to whether the government was limited to the matters charged in its complaint, however, not whether § 2401(a) is applicable as a statute of limitations to immigration cases. In *Nagahi v. Immigration and Naturalization Service*, an immigration case cited by Respondents, the Tenth Circuit held that "in the absence of a specific statutory limitations period, a civil action against the United States under the APA is subject to the six year limitations period found in 28 U.S.C. § 2401(a)." 219 F.3d 1166, 1171 (10th Cir. 2000). District courts in other circuits have also applied § 2401(a) in immigration cases. *See Perez v. Napolitano*, No. 10-348 (RBK/KMW), 2011 WL 149889 at 3 n.1 (D. N.J Jan. 18, 2011); *Martinez-Rodriguez v. U.S. Dep't of Homeland Sec.,* No. 06 C 10220 (MHD), 2009 WL 3241533, at *5, *7 (S.D.N.Y Oct. 5, 2009) (applying § 2401(a) to petition for naturalization). Petitioner's case is clearly an action against an agency of the United States requesting relief from that agency, so § 2401(a) applies to his petition.

**II.     Timeliness Under § 2401(a)**

Respondents urge that Petitioner's claim accrued in September 2004, when Petitioner obtained a certified copy of his birth certificate from Kilkis, Greece, and learned that the birth date he provided for his original Naturalization Certificate was incorrect. (Resp'ts' Reply at 3.) According to Respondents, Petitioner therefore had until September 2010 to petition this court for an amendment. (Resp'ts' Mem. at 2.) Petitioner argues in response that he did not suffer any harm

6

in 2004, so any claim he could have brought then would not have been ripe. According to Petitioner, he did not suffer any harm until after he unsuccessfully attempted to renew his driver's license sometime between September 2004 and October 2009. Petitioner contends that Petitioner's action did not accrue until March 23, 2011, when Petitioner obtained USCIS's second denial of a change to his birth date on his Naturalization Certificate and was notified that only a federal court could make his requested change. (Pet.'s Resp. at 4.)

Under the "discovery rule," a statute of limitations period begins when a plaintiff discovers or should have discovered that he has been injured. *See Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003); *Washington v. Summerville*, 127 F.3d 552, 556 (7th Cir. 1997). The discovery rule applies in cases against the federal government. *Arroyo v. United States*, 656 F.3d 663, 673 (7th Cir. 2011) (discovery rule is "the rule that federal statutes of limitations don't begin to run until the prospective plaintiff discovers, or should have discovered, that he has been injured–and by whom.") This court agrees with Tzirides that his discovery that his birth date was incorrect in 2004 was not enough to alert him that he had been injured. Instead, Petitioner's claim accrued when he received USCIS's denial of his Form N-565 request for a replacement Certificate of Naturalization on December 15, 2009. It was at that time that Petitioner understood or should have understood he was harmed by USCIS's denial, and his claim accrued. Notably, *Nagahi*, the authority cited by Respondents to support the application of § 2401(a) in this case, recognized that a United States agency's final denial of an application provided the relevant date for the accrual of a claim under § 2401(a). 219 F.3d at 1171.

USCIS is correct, however, that its first denial of Tzirides's request in December 2009, rather than USCIS's second denial in March 2011, is an appropriate accrual date. The fact that USCIS did not explicitly inform Tzirides that it lacked the authority to make the change until 2011 does not change things. Whether the first or second USCIS denial functions as the accrual date makes little difference to the case, however, because Petitioner filed his claim with this court on September 20,

7

2011 within six years of both dates.

### III. Applicability of 8 C.F.R. § 338.5

Both parties agree that under 8 C.F.R. § 338.5, only a federal court is authorized to grant an amendment to Petitioner's Certificate of Naturalization. Courts may amend certificates of naturalization under § 338.5 if the petitioner seeking amendment simply made "an honest mistake." *In re Lee*, No. C 06-80150-MISC MJJ, 2007 WL 926501 at *2 (N.D. Cal. Mar. 26, 2007). For example, in *Kouanchao v. USCIS*, 358 F. Supp. 2d 837, 839 (D. Minn. 2005), the district court ordered petitioner's Certificate of Naturalization amended to correct a discrepancy between his Social Security and immigration records. The court permitted substitution of petitioner's genuine birth certificate in place of the false birth certificate he had obtained in order to attend school in war-torn Laos, and then used when he was naturalized. Here, as in *Kouanchao*, there is no indication of fraud or bad faith from Petitioner—only a good-faith clerical error—so § 338.5 applies.

### IV. Petitioner's Right to Relief

Respondents do not describe any harm that granting the amendment would cause. Nor is there any evidence that Petitioner committed fraud or acted with bad faith. This case does not present a challenge to the denial of naturalization: Petitioner is already a United States citizen. The rationale for denying his request is elusive.

In modern society, access to a driver's license is of obvious significance. The right to travel as "firmly embedded in our jurisprudence." *Saenz v. Roe*, 526 U.S. 489, 498 (1999). The Supreme Court has recognized that due process protections apply to both the deprivation of a driver's license and to the right to travel. *See Dixon v. Love*, 431 U.S. 105, 112 (1977). Although Petitioner's right to a driver's license is not being directly adjudicated in this matter, if this Motion to Dismiss is granted, Petitioner will be denied a driver's license because of the refusal of the DMV (over which this court has no jurisdiction) to renew his license while a discrepancy between his birth date records remains. Granting Respondents' motion would therefore limit Petitioner's ability to "freely

8

go from place to place." (Pet.'s Resp. at 6.). In light of the important rights at stake for Petitioner, and the lack of any substantive reasons from Respondents to deny Petitioner's request, it appears that Petitioner is entitled to the relief he seeks.

## CONCLUSION

Respondents' motion to dismiss [10] is denied. Respondents have 28 days in which to show cause why Petitioner's petition [1] should not be granted.

ENTER:

Dated: March 27, 2013

_____
REBECCA R. PALLMEYER
United States District Judge